### Bill Loid v. The State.

#### No. 4526. Decided February 24, 1909.

**Aggravated Assault—Insufficiency of Evidence.**

Where upon trial for aggravated assault the evidence showed that defendant came to prosecutrix room and twice requested her to have intercourse with him, which she declined, and went through the window to a neighbor's residence; that defendant followed her requesting her to return to his house, and that in getting over the fence she cut herself on the wire, the conviction could not be sustained upon these facts, and it was error in the court's charge to predicate an assault upon the injury prosecutrix received in getting over the fence.

Appeal from the County Court of Van Zandt. Tried below before the Hon. Jno. S. Spinks.

Appeal from a conviction of aggravated assault; penalty, a fine of $50 and thirty days confinement in the county jail.

The opinion states the case.

No brief on file for appellant.

*F. J. McCord*, Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of aggravated assault, his punishment being assessed at a fine of $50 and thirty days confinement in the county jail.

The evidence, in brief, discloses that appellant's wife had been sick and confined to her bed for about a month at the time of the alleged assault. That on the night of the 12th of July appellant went to the bed of Lizzie King, who had been waiting upon his wife in the capacity of nurse, and asked her to "give him some." He made this request twice. The girl declined to accede, got out of bed, went through a window, crossed a fence and started in the direction of Mrs. Hallbrooks, appellant following her insisting on her returning to his house. Prosecutrix run against a loose barbed wire, and cut her leg. Appellant followed her on to Mrs. Hallbrooks' residence and again requested her to return to his residence with him, which she declined. She says appellant was walking fast after her and she was walking fast to keep away from him. On cross-examination she stated appellant did not put his hands on her at all; only made the request above indicated. That she went out of the window, got over the fence, went down through a "patch" with defendant following. She denied seeing a man get up out of the weeds close to the house as she went over the fence; no one hal-

loed at her to stop except appellant; nobody had been in her room that night except appellant. Mrs. Hallbrook testified that she knew appellant and prosecutrix Lizzie King. That Miss King came to her house at night about one o'clock, being the 12th of July, the same night indicated by the testimony of prosecutrix. That she knew it was about one o'clock at night because of the fact she was giving medicine to some one who was sick in her house. That she heard appellant and Miss King talking on the gallery, but did not understand what appellant said, but heard Miss King tell appellant she would not go back to his house. Appellant carried Miss King's shoes to her the next morning about daylight. The two residences were about two hundred yards apart. Appellant's wife says that prosecutrix was staying at her house during the summer, in June and July; that she was confined about the first of June and prosecutrix came to wait on her during her sickness. That on the night of July 12, defendant and herself heard some one go into prosecutrix's room. That appellant went in there and heard some one go out at the window of prosecutrix's room. That witness got up and went to the hall door and saw prosecutrix go out of the window. Appellant came back in the hall and went to the back door. That she saw prosecutrix crawl over the fence into a "patch," and after she had gone a little distance down in "the patch" she saw a man rise up in the weeds close to the yard fence and beckon to prosecutrix to stop. She looked around, but kept going. That the party in the weeds went off in the same direction as did prosecutrix, both going in the direction of Mrs. Hallbrook's residence. She says her husband did not get off the gallery and did not follow prosecutrix. That subsequently during the night, a little before day, she told appellant to take Lizzie King's shoes to her and tell her to come and get her clothes; that she did not want her about her place any more. Appellant's testimony is practically the same as that testified by his wife, going a little more into detail.

The court charged the jury the usual definitions of assault and assault and battery, and further instructed them that any indecent fondling or familiarity of the person of a female by an adult male against her will is an assault, and any attempt to indecently handle the person of a female by an adult male, against her will, when such attempted handling or familiarity is coupled with an ability to so handle is an assault. He further instructed the jury that if an adult male attempts to indecently handle or fondle the person of a female against her will, and in such attempt he pursues said female, and in her flight to escape, said female is injured, and such injury is caused by the acts of the said adult male, by and through his intent to indecently handle the person of said female, then he would be guilty of an aggravated assault, or an aggravated assault and battery. Exceptions were reserved, especially to that portion of the charge

quoted, to wit: "If an adult male attempts to indecently handle or fondle the person of a female against her will, and in such attempt he pursues said female, and in her flight to escape, said female is injured, and such injury is caused by the acts of the said adult male, etc., appellant would be guilty of an aggravated assault or an aggravated assault and battery." Several exceptions were reserved to this portion of the charge, which we think are well taken under the facts of this case. The evidence excludes any idea of assault or assault and battery. The prosecutrix testified that appellant came to her room and twice requested her to have intercourse with him, which she positively declined, and went through the window to a neighbor's residence. That appellant followed along after her, requesting her to return to his house. That in getting over the fence she cut herself on the wire. Under no phase of this testimony could a conviction for assault or assault and battery be had. The indecent fondling of the person of a female against her consent which would produce a sense of shame, mortification or disgrace has been held to constitute the crime of aggravated assault and battery, but we are not aware of any case, nor has any been called to our attention where the mere use of solicitations to have intercourse has been held an assault when the language is used by an adult male towards a female. Nor do the facts with reference to the prosecutrix receiving a cut in getting over the wire fence attributed to defendant constitute an assault on his part. The girl under her testimony was fleeing from appellant's residence at night and he was following and urging her to return. The fact, under those conditions, in getting through the fence she received an injury, would not be attributable to defendant as an assault upon her person. Her testimony even excludes the idea that he was trying to overtake her for the purpose of having intercourse with her or of touching her person. He was simply soliciting or requesting her to return to his residence. As the case is presented by this record, we are of opinion that there is not a sufficient showing made to justify the verdict returned by the jury. The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

RAMSEY, JUDGE.—I concur in the conclusion reached on the facts.